<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

<table>
<tr>
<td>
LAUNDRY DISTRIBUTION AND FOOD SERVICE JOINT BOARD, WORKERS UNITED,<br><br>
      Plaintiff,<br><br>
      v.<br><br>
WACOAL AMERICA, INC.,<br><br>
      Defendant.
</td>
<td>
No. 25cv16877 (EP) (JSA)<br><br>
**OPINION**
</td>
</tr>
</table>

**PADIN, District Judge.**

This matter comes before the Court on Plaintiff Laundry Distribution and Food Service Joint Board, Workers United's (the "Union") motion to confirm an arbitration award entered against Defendant Wacoal America, Inc. ("Wacoal") and to obtain attorneys' fees and costs. D.E. 2-1[1] ("Motion" or "Mot."). Defendant Wacoal opposes and cross-moves to vacate the arbitration award pursuant to 9 U.S.C. § 10(a)(4). D.E. 10[2] ("Cross-Motion" or "Opp'n"). The Union replies. D.E. 13 ("Reply").

The Court decides the Motion and Cross-Motion without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons set forth below, the Court will **DENY** Wacoal's Cross-Motion to vacate the arbitration award, **GRANT** the Union's Motion **in part**, and **DENY**

---

[1] The Union filed its notice of motion at D.E. 2 and its motion at D.E. 2-1. For ease of reference, the Court refers to D.E. 2-1 as the Union's Motion.

[2] Wacoal filed its notice of motion at D.E. 11 and its cross-motion and opposition at D.E. 10. For ease of reference, the Court refers to D.E. 10 as Wacoal's Cross-Motion.

the Union's Motion **in part**.  Specifically, the Court will **CONFIRM** the arbitration award and **DENY** the Union's request for attorneys' fees and costs.

## I.      BACKGROUND

### A.      Factual Background

The Union and Wacoal entered into a collective bargaining agreement covering the period January 1, 2022, through December 31, 2025.  D.E. 1-3, Ex. A–B ("CBA") at 1, 42.  Among the many sections in the CBA is one that governs the conditions under which a Union representative may access Wacoal's facilities and employees during working hours for the purpose of ascertaining Wacoal's compliance with the CBA.  Article 3 provides:

> A Union representative shall have free access to the shop during working hours in compliance with the Employer's visitor policy as applicable, after he makes his presence known to the office of the Employer,[3] for the purpose of ascertaining whether the terms and provisions of this Agreement are being complied with, provided that the workers are not unduly disturbed in their work. . . . The Union's representative shall have free access upon arrival to the warehouse floor while being accompanied by the shop steward.

CBA at 2–3.

The parties do not dispute that two Union representatives, Yadhira Alvarez and Alberto Garcia, entered Wacoal's facility, instigated a "Workers' March on the Boss" (the "March"), unduly disturbed Wacoal's workers, and thereby breached the conditions of access provided by Article 3.  *See* Mot. at 6–8; Opp'n at 3–4.  Wacoal thereafter permanently banned Ms. Alvarez and Mr. Garcia from accessing Wacoal's facility for any purpose.  D.E. 1-3, Ex. C (the "Award") at 4–5.  Wacoal also refused to allow any Union representative from meeting with bargaining committee members on-site or during working hours for purposes of negotiating a new collective

---

[3] As referred to in Article 3, Wacoal is the "Employer."

bargaining agreement.  *Id.*  Wacoal has permitted a different Union representative to access its facility.  D.E. 11-3 ("McCreadie Certification") at 1.

The Union challenged Wacoal's permanent ban on Ms. Alvarez and Mr. Garcia and Wacoal's refusal to permit Union representatives to meet with Union members during working hours to prepare for negotiation sessions.  Award at 2.  The parties appeared for a hearing before Jay M. Siegel (the "Arbitrator") on June 12, 2025, and on July 30, 2025.  *Id.* at 1.  The parties engaged in post-hearing briefs, and after the record closed on September 19, 2025, the Arbitrator issued an Award in the Union's favor on October 9, 2025.  *Id.* at 1, 17.

**B.      The Award**

The Arbitrator considered both the Union's arguments and Wacoal's arguments.  *Id.* at 5–12.  The Arbitrator first concluded that Wacoal's permanent ban on Ms. Alvarez and Mr. Garcia was a breach of the CBA.  *Id.* at 15.  The Arbitrator agreed that Ms. Alvarez and Mr. Garcia had violated the conditions of access described in Article 3 of the CBA by leading the March, which both unduly disturbed workers and went beyond the access "envisioned by Article 3, i.e., to ascertain whether terms and provisions of the CBA were being complied with."  *Id.* at 14–15.

The Arbitrator, however, rejected the notion that a *permanent* ban on the Union's representatives was permissible under Article 3.  *Id.* at 17.  The Arbitrator explained that the CBA provided a representative of the Union—which was up to the Union to select—with free access pursuant to the conditions prescribed by Article 3.  *Id.* at 13.  By permanently banning two Union representatives from accessing Wacoal's premises, the Arbitrator concluded that Wacoal was impinging upon the rights that the Union had bargained for.  *Id.*  Thus, Wacoal's permanent ban constituted a breach of Article 3 of the CBA and could not be sustained.  *Id.*

The Arbitrator next concluded that while Article 3 limited the Union's access to Wacoal's facility to one representative for purposes of ascertaining Wacoal's compliance with the CBA, Article 3 contained no express limitation on the Union's access to Wacoal's facility for purposes of bargaining. *See id.* at 17 n.3. For bargaining purposes, the Arbitrator therefore consulted the parties' past practice and concluded that "[f]or bargaining, the Union's practice of having two representatives should stand as that has been the longstanding practice." *Id.*

The Arbitrator issued the following orders in his Award:

1. The grievance is sustained to the extent that [Wacoal] violated Article 3 of the CBA by permanently denying access to [Wacoal's] shop to Union representatives Yadhira Alvarez and Alberto Garcia since on or about December 16, 2024. As a remedy, [Wacoal] shall lift this access denial on October 31, 2025. Effective November 1, 2025, [Wacoal] will be required to permit both Yadhira Alvarez and Alberto Garcia to have access to the shop in accordance with Article 3.

2. [Wacoal] violated past practice pursuant to Article 3 by refusing to allow Union representatives to meet with bargaining committee members on working time to prepare for negotiations on December 27, 2024, and December 30, 2024. As a remedy, [Wacoal] shall cease and desist from refusing to allow Union representatives to meet with bargaining committee members to prepare for negotiations and will permit up to two representatives of the Union's choosing, including Ms. Alvarez and Mr. Garcia, to meet with bargaining committee members on [Wacoal] time and on [Wacoal] property for reasonable amounts of time as had been done in the past, i.e., sometimes for as little as 20 minutes and sometimes for as much as one hour or so.

*Id.* at 17.

## II.    LEGAL STANDARD

Under the Federal Arbitration Act, 9 U.S.C. §§ 1–16 (the "FAA"), "[i]f the parties have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration," then the prevailing party may move the court to confirm the award. FAA § 9. Under such circumstances, "a court 'must' confirm an arbitration award 'unless' it is vacated, modified,

or corrected 'as prescribed' in [FAA] §§ 10 and 11."  *Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008) (quoting FAA § 9).

District courts have little authority to disturb arbitration awards.  *See United Transp. Union Local 1589 v. Suburban Transit Corp.*, 51 F.3d 376, 379 (3d Cir. 1995).  Their review of arbitration awards "could be generously described only as extremely deferential."  *Dluhos v. Strasberg*, 321 F.3d 365, 372 (3d Cir. 2003).  Vacatur is rare.  *Freeman v. Pittsburgh Glass Works, LLC*, 709 F.3d 240, 251 (3d Cir. 2013).  Justifying it is a "high hurdle.  It is not enough . . . to show that the panel committed an error—or even a serious error."  *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010).  There must be more.  *Facta Health Inc. v. Pharmadent LLC*, No. 23-2224, 2024 WL 4345299, at *6 n.5 (3d Cir. Sept. 30, 2024).

§ 10 of the FAA provides the four narrow grounds upon which an arbitration award may be vacated:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators; or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter was not made.

*Sutter v. Oxford Health Plans LLC*, 675 F.3d 215, 219 (3d Cir. 2012) (quoting FAA § 10(a)), *as amended* (Apr. 4, 2012), *aff'd*, 569 U.S. 564 (2013).  The party seeking to avoid an arbitration award bears the burden of showing that vacatur is merited under FAA § 10(a).  *Handley v. Chase Bank*, 387 F. App'x 166, 168 (3d Cir. 2010).

5

## III.    DISCUSSION

The Union moves to confirm the Award and to obtain attorneys' fees and costs.  Wacoal cross-moves to vacate the Award and to oppose any grant of attorneys' fees and costs.  For the reasons set forth below, the Court will **DENY** Wacoal's Cross-Motion to vacate the arbitration award, **GRANT** the Union's Motion **in part**, and **DENY** the Union's Motion **in part**. Specifically, the Court will **CONFIRM** the arbitration award and **DENY** the Union's request for attorneys' fees and costs.

### A.    The Court Will Confirm the Award

Wacoal argues the Arbitrator exceeded his powers in violation of § 10(a)(4) of the FAA and vacatur of the Award is therefore merited.  Wacoal raises two main arguments: the Arbitrator (1) ignored the terms of the CBA and (2) relied on improper evidence to arrive at his judgment. Because neither argument justifies vacatur under the "extremely deferential" standard of the FAA, the Court will **DENY** Wacoal's Cross-Motion to vacate the Award, **GRANT** the Union's Motion to confirm the Award, and **CONFIRM** the Award.

#### 1.    The Arbitrator did not exceed his powers in concluding that a permanent ban violated Article 3 of the CBA

Under FAA § 10(a)(4), an arbitrator exceeds his powers "only when [he] strays from interpretation and application of the agreement and effectively 'dispenses his own brand of industrial justice.'" *Stolt-Nielsen*, 559 U.S. at 671 (quoting *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (per curiam)).  Vacatur is warranted when an arbitrator "grants relief in a form that cannot be rationally derived from the parties' agreement and submissions or issues an award that is so completely irrational that it lacks support altogether." *CPR Mgmt., S.A. v. Devon Park Bioventures, L.P.*, 19 F.4th 236, 246 (3d Cir. 2021) (quoting *Sutter*, 675 F.3d at 219-20).  Otherwise, "courts have no business overruling an award because [their] interpretation

6

of the contract may differ." *Indep. Lab'ys Emps. Union v. ExxonMobil Rsch. & Eng'g Co.*, 11 F.4th 210, 211 (3d Cir. 2021) (quoting *United Steelworkers of Am. v. Enter. Wheel and Car Corp.*, 363 U.S. 593, 599 (1960)).

Wacoal makes two arguments. *First*, that the Arbitrator exceeded his authority by injecting a "reasonableness" standard into the CBA where none exists. Opp'n at 7. To support its argument, Wacoal relies on authorities vacating arbitration awards where arbitrators have rewritten the underlying collective bargaining agreement to justify the relief they dispense. *See id.* at 6 (citing *Monongahela Valley Hosp., Inc. v. United Steel Paper & Forestry Rubber Mfg. Allied Indus. & Serv. Workers Int'l Union*, 946 F.3d 195, 199 (3d Cir. 2019) and *StoneMor, Inc. v. Int'l Bhd. of Teamsters*, 107 F.4th 160, 163 (3d Cir. 2024)).

In *Monongahela*, the collective bargaining agreement subordinated union employees' right to their preferred vacation to the employer's right to deny requested vacation. 946 F.3d at 201. Nevertheless, the arbitrator concluded that the employer violated the collective bargaining agreement when it denied an employee's requested vacation without identifying an "operating need" for the employee to be at work during that time. *Id.* Because the collective bargaining agreement in *Monongahela* imposed no "operating need" prerequisite to justify the employer's denial of requested vacation, the Third Circuit agreed with the district court that the arbitrator exceeded his authority by rewriting the collective bargaining agreement and thereby violated § 10(a)(4). *Id.* at 200–01.

In *StoneMor*, the Third Circuit also held that vacatur of an award was appropriate. 107 F.4th at 163–64. There, the union challenged the meaning of a wage provision in the collective bargaining agreement and did so within seven days of the agreement's execution, but over ninety days after its ratification. *Id.* at 162. Although the collective bargaining agreement expressly

7

stated that it became effective and binding as of the date of its ratification—not as of the date of its execution—the arbitrator nevertheless found the union's grievance timely filed because it was within ten days of the agreement's execution. *Id.* at 162–64. By rewriting the date on which the collective bargaining agreement became binding, the arbitrator exceeded the scope of his authority and violated § 10(a)(4). *Id.* at 163–64.

According to Wacoal, the Arbitrator engaged in the same prohibited mischief as in *Monongahela* and *StoneMor* when he concluded that Wacoal's permanent ban "went so far beyond what is reasonable that it must be considered a violation of Article 3." Opp'n at 8 (quoting Award at 14). This argument, however, mischaracterizes the Award in an effort to manufacture arbitrator overreach and a violation of § 10(a)(4).

The facts here are distinguishable from *Monongahela* and *StoneMor* for at least two reasons. *First*, the Arbitrator here did not ignore the terms of the CBA. Unlike in *Monongahela* and *StoneMor*, where the arbitrators contradicted express language in the collective bargaining agreements, the Arbitrator did not contradict the CBA because Article 3 of the CBA is silent regarding what the repercussions are for Union representatives who violate Article 3's conditions of access. Given the CBA's silence on the issue, the Arbitrator concluded that limiting Ms. Alvarez's and Mr. Garcia's access to the facility for some finite period of time would have been a reasonable response to their short-lived violation of Article 3's conditions of access. Award at 15. A permanent ban, however, went beyond what was a reasonable repercussion for breaching Article 3 and its enactment found no support in the CBA.

*Second*, unlike the decisions in *Monongahela* and *StoneMor*, the Arbitrator's conclusion here invoked and relied upon the express terms of the collective bargaining agreement. Wacoal agreed to provide a Union representative *free access* to its facility, consistent with the conditions

outlined in Article 3 of the CBA.[4]  *Id.* at 15–17.  By imposing a *permanent* ban on two Union representatives, the Arbitrator concluded that Wacoal's actions impinged upon the rights the Union bargained for.  *Id.*

Accordingly, Wacoal's objection that the Arbitrator made up and inserted an untethered "reasonableness" standard into the CBA mischaracterizes the Arbitrator's findings.  The Arbitrator examined the terms of the CBA, found no grounds that reasonably justified the sanctions Wacoal issued, and further found that the sanctions Wacoal issued prevented the Union from exercising the rights it bargained for as part of Article 3.  The Arbitrator's conclusion that Wacoal's ban violated the CBA—whether right or wrong—was therefore rationally derived from the terms of the CBA.  *See CPR Mgmt.*, 19 F.4th at 246.  The Court will not vacate the Arbitrator's lift of Wacoal's ban under § 10(a)(4).

> 2.  *The Arbitrator did not exceed his powers in concluding that Wacoal's refusal to provide access to Union representatives for bargaining purposes violated past practice*

Next, Wacoal argues that the Arbitrator exceeded his powers under § 10(a)(4) by requiring that Wacoal provide two Union representatives with access for bargaining purposes.  Opp'n at 10–11.  Wacoal argues that because Article 3 unambiguously requires granting access to a single Union representative, the Arbitrator's order directing Wacoal to provide the Union with access to two Union representatives has no rational basis in the CBA's text.  *Id.*

Wacoal again misframes the CBA in an effort to manufacture arbitrator misconduct.  The CBA mandates that Wacoal must provide "[a] Union representative" with "free access to the shop during working hours . . . *for the purpose of ascertaining whether the terms and provisions of [the*

---

[4] The Arbitrator concluded that the Union had the right to choose who would be its representative. Award at 16.  This further distinguishes these facts from *Monongahela* where an employee's right to take vacation was expressly subordinated to the employer's right to deny vacation.  946 F.3d at 201.

*CBA] are being complied with . . . .*" CBA at 2–3 (emphasis added). Article 3 is silent on what terms apply when Union representatives seek access for purposes *other than* ascertaining compliance with the CBA. *See id.* Indeed, nothing in Article 3 unambiguously addresses what limitations, if any, apply when Union representatives seek access for other purposes. *Akers Nat'l Roll Co. v. United Steel, Paper, and Forestry Mfg. Energy Allied Indus. Serv. Workers Int'l Union*, 712 F.3d 155, 162 (3d Cir. 2013) (finding arbitrator did not exceed authority by treating a provision as ambiguous because it did not specifically address the employer's rights to *schedule* its workers, although it did address the employer's right to *direct* its workers).

And that is exactly what is at issue here. The portion of the Award Wacoal takes issue with is how many Union representatives are entitled to access rights, not for the purposes of ascertaining compliance with the current CBA, but for the purposes of negotiating a new collective bargaining agreement. Because the text of Article 3 does not unambiguously resolve that question, the Arbitrator's reliance on past practice to understand the governing terms was "entirely appropriate and in accordance with the case law in this Circuit." *Pocono Med. Ctr. v. JNESO Dist. Council 1*, No. 22-1901, 2023 WL 4685985, at *20 (M.D. Pa. July 21, 2023) (citing *Akers*, 712 F.3d at 156–57). Moreover, the law of this Circuit requires that arbitrators consult, as part of the collective bargaining agreement, the "overall relationship" between a union and an employer "as part of the 'law of the shop,' as long as doing so d[oes] not violate an unambiguous contrary provision of [that collective bargaining agreement]." *ExxonMobil*, 11 F.4th at 217 (quoting *United Steelworkers v. Warrior and Gulf Navigation Co.*, 363 U.S. 574, 580 (1960)).

As the Arbitrator explained, Wacoal had a "longstanding history" of permitting two Union representatives to enter the premises during company time to meet with bargaining committee members. Award at 17 n.3. Contrary to Wacoal's objections, the Arbitrator did not, therefore,

10

exceed his authority in violation of § 10(a)(4) by consulting past practice and directing Wacoal to act in accordance with those terms. *See Brentwood Med. Assocs. v. United Mine Workers of Am.*, 396 F.3d 237, 241 (3d Cir. 2005) ("An award draws its essence from a collective bargaining agreement if its interpretation can *in any rational way* be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention" (quoting *United Transp. Union Local 1589 v. Suburban Transit Corp.*, 51 F.3d 376, 379–80 (3d Cir. 1995))).

Having determined that the Arbitrator did not violate § 10(a)(4) by terminating Wacoal's access ban or by permitting two Union representatives with facility access for bargaining purposes, the Court will accordingly **DENY** Wacoal's request for vacatur, **GRANT** the Union's Motion to confirm the Award, and **CONFIRM** the Award.[5]

### B.    The Court Will Not Award Attorneys' Fees and Costs

In addition, the Union seeks attorneys' fees and costs. "In suits to compel one party to submit to arbitration or to abide by an award, fees are generally awarded if the defaulting party acted without justification, or if the party resisting arbitration did not have a 'reasonable chance to prevail.'" *Chauffeur, Teamsters and Helpers, Local Union No. 765 v. Stroehmann Bros. Co.*, 625 F.2d 1092, 1094 (3d Cir. 1980). Courts may also award attorneys' fees and costs when it is clear that a party has litigated "in bad faith, vexatiously, or for oppressive reasons." *Mobil Oil Corp. v. Indep. Oil Workers Union*, 679 F.2d 299, 305 (3d Cir. 1982). Otherwise, parties normally bear their own legal expenses. *Id.*

The Union contends that Wacoal has litigated vexatiously and without justification as evidenced by its history of refusing to comply with arbitral awards, by its baseless motion practice before the Arbitrator in this case, and by its unfulfilled representations that it would comply with

---

[5] Wacoal does not challenge the other portions of the Award.

the Arbitrator's orders within forty-eight hours.  Reply at 31.  The Union, however, identifies only this case and one other where Wacoal has opposed the entry of arbitral awards.  *Id.*  But two instances hardly establish a *history* of refusing to comply with arbitral awards for the purposes of departing from the default rule that parties should bear their own legal costs.  Nor has the Union sufficiently explained why Wacoal's "bevy of pre- and post-hearing and post-award motions" challenging the merits of the Award justifies granting attorneys' fees and costs.  *See Kane Gas Light & Heating Co. v. Int'l Bhd. of Fireman & Oilers, Loc. 112*, 687 F.2d 673, 683 (3d Cir. 1982) ("[T]he fact that [an employer] challenged the arbitrator's award on the merits is not by itself sufficient to justify a grant of attorney's fees to the party seeking enforcement of the award.").  Nor can the CBA, which directs both parties to comply with arbitral awards, justify an award of attorneys' fees.  Otherwise, attorneys' fees would be available in virtually every case in which an agreement to arbitrate exists.

On this record, attorneys' fees and costs are not justified.  The Court will therefore **DENY** the Union's request for attorneys' fees and costs.

## IV.    CONCLUSION

For the foregoing reasons, the Court will **DENY** Wacoal's Cross-Motion to vacate the arbitration award, **GRANT** the Union's Motion **in part**, and **DENY** the Union's Motion **in part**.  Specifically, the Court will **CONFIRM** the arbitration award and **DENY** the Union's request for attorneys' fees and costs.

An appropriate Order and Judgment accompany this Opinion.


Dated:  June 8, 2026


Evelyn Padin, U.S.D.J.

12